UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DARNELL STRONG,

       Plaintiff,

v.                                                  Case No. 07-13092

JOHN E. POTTER, Postmaster                          HONORABLE AVERN COHN
General,

       Defendant.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND DISMISSING CASE

I. Introduction

This is an employment discrimination case. Plaintiff Kevin Strong, proceeding

pro se, is suing defendant, John E. Potter, Postmaster General of the United States

Postal Service (the government) claiming discrimination resulting in a hostile work

environment based on age, disability (plantar fasciitis[1] and lumbar strain), and retaliation

_____

[1]According to Wikipedia:
    Plantar fasciitis . . . is a painful inflammatory condition caused by
excessive wear to the plantar fascia of the foot or biomechanical faults that cause
abnormal pronation of the foot. The pain usually is felt on the underside of the
heel, and is often most intense with the first steps of the day. . . . Obesity, weight
gain, jobs that require a lot of walking on hard surfaces, shoes with little or no
arch support, and inactivity are also associated with the condition. This condition
often results in a heel spur on the calcaneus, in which case it is the underlying
condition, and not the spur itself, which produces the pain.
    . . . Many different treatments have been effective, and although it typically
takes six to eighteen months to find a favorable resolution, plantar fasciitis has a
generally good long-term prognosis. . .
http://en.wikipedia.org/wiki/Plantar_fasciitis

(prior EEO activity).[2]  Strong's claims pertain to events occurring while employed as a

Mail Handler at the Detroit Bulk Mail Center in Allen Park, Michigan.[3]  His claims were

also the subject of detailed administrative proceedings culminating in a Final Agency

Decision in favor of the government.

Before the Court is the government's motion for summary judgment on all of

Strong's claims.  As will be explained, the matter is now ready for decision.  For the

reasons that follow, the motion will be granted and the case dismissed.

## II.  Background

Strong was employed by the Post Office for over twenty years, most recently as

a Mail Handler, a position he held for approximately eleven years.  He is an individual

over 40.  His medical condition of plantar fasciitis was diagnosed in 2000 and continues

to the present day.  His condition of lumbar strain was diagnosed in September 23,

---

[2]In his response, Strong says that he is also claiming sex discrimination in addition to claims of discrimination based on age, disability and retaliation.  However, the complaint does not include a claim for sex discrimination.  As such, Strong has not exhausted his administrative remedies relative to this claim and the Court will not consider it.  See Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991).

[3]This is Strong's second of three cases filed against the government regarding his employment with the Postal Service.  Strong's first case was filed on April 19, 2004. Strong was represented by counsel, who later withdrew.  Strong v. Potter, Case No. 04-71460.  The case was assigned to the undersigned.  On December 21, 2006, the parties stipulated to dismiss the complaint without prejudice, apparently because Strong had not pursued his rights through the required administrative process.  On July 23, 2007, Strong filed the instant case after exhaustion of his administrative remedies.  It was reassigned to the undersigned as a companion to Case No. 04-71560.  The third case was filed on August 13, 2008, apparently raising claims following Strong's recent termination.  Strong v. Potter, Case No. 08-13506.  The 2008 case was assigned to the undersigned as a companion to the 2007 case.  Strong recently filed an Amended Complaint in the 2008 case.  The Amended Complaint has not yet been served on the government.

2005 and fully resolved in May 2006.

As will be explained below, Strong was offered several limited light duty assignments, mostly in the Mail Handler position, beginning on September 17, 2003 due to his plantar fasciitis. Strong accepted some and rejected some of the offers. Strong's request for light duty were denied either because Strong failed to provide proper medical documentation or because no work was available within his medical restrictions. When this occurred, Strong was apparently placed in nonpay status.

During the course of his employment as a Mail Handler, Strong filed a charge of discrimination with the EEO claiming discrimination resulting in a hostile work environment and retaliation. Strong's claims proceeded through the administrative process, culminating in a Final Agency decision in favor of the government. The EEO subsequently issued Strong a right-to-sue letter.

On July 23, 2007, Strong filed a complaint asserting the same claims of discrimination before the EEO. After filing the complaint, Strong served discovery on the government. Dissatisfied with the government's response, Strong filed a motion to compel. The government responded, essentially contending that all information requested had been produced, particularly during the administrative proceedings. Strong replied, contending the responses were deficient.

The Court held a hearing on Strong's motion to compel on March 26, 2008. At the hearing, the government indicated it was prepared to file a motion for summary judgment. The Court advised the government to file such a motion and that Strong was not to file a response. Instead, the Court stated that it would hold a hearing after the government filed its motion at which Strong could explain what additional discovery he

needed to respond to the motion.

The government filed the instant motion for summary judgment on April 11, 2008 with 62 exhibits attached. The government also filed a Statement of Material Facts Not in Dispute, running 54 paragraphs. The Court held a hearing on the government's motion on May 21. At the hearing, the Court instructed Strong to file within thirty days a paper which (1) responds to the government's Statement of Material Facts Not in Dispute and (2) list the names of the individuals Strong seeks to depose as well as a summary of their expected testimony.

After requesting and being granted several extensions, Strong submitted a response to the government's motion on July 9, 2008. Strong has responded to government's Statement of Material Facts, as well setting forth additional argument supportive of his claims. There is no indication in Strong's response that he needs additional discovery. Indeed, Strong attached ninety-five exhibits to his response. The government thereafter filed a reply. It therefore appears that the record is complete for purposes of summary judgment and the matter may proceed to decision.[4]

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of

---

[4]On October 23, 2008, Strong filed a motion for leave to file a sur-reply, attaching several exhibits. The motion and exhibits total over 100 pages. The motion for leave is DENIED. Regardless, the Court has reviewed Strong's filing and finds nothing in it which alters the Court's conclusion that Strong has not made out any of the claims in this case.

material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

IV.  Legal Standards

A.  Age Discrimination

Strong has asserted claims of age discrimination under the Age Discrimination and Employment Act (ADEA). 29 U.S.C. § 621-634. The ADEA prohibits employers

from discriminating against individuals who are over 40 years of age based on their age. 29 U.S.C. § 633a.  Claims under the ADEA analyzed under the framework for a claim under Title VII.  See Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2000). Here, where there is no direct evidence of discrimination, Strong's claims are subject to the tripartite burden-shifting analysis first announced by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and subsequently modified in Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981).  See Clay v. United Parcel Service, Inc., 501 F.3d 695, 706 (6th Cir. 2007).  Under the McDonnell Douglas framework, Strong has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.  Second, if Strong succeeds in proving the prima facie case, the burden shifts to the government "to articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Third, should the government carry this burden, Strong must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  Burdine, 450 U.S. at 252.

To establish a prima facie case of age discrimination under the ADEA, by alleging "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker."  Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 521 (6th Cir. 2008).

### B.  Disability Discrimination

Strong also claims discrimination because of his disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq.  Claims under the Rehabilitation Act

are also analyzed under the <u>McDonnel Douglas</u> framework.  <u>See</u> <u>Burnes v. City of</u>

<u>Columbus Dept. of Public Safety</u>, 91 F.3d 836, 843 (6th Cir. 1996).

With respect to a prima facie case of disability discrimination under the

Rehabilitation Act, the standards under the Americans with Disabilities Act (ADA) are

applied.  29 U.S.C. § 794(d).  In order to make out a prima facie case of disability

discrimination, Strong must show (1) that he is an individual with a disability, (2) who

was otherwise qualified to perform a job's requirements, with or without reasonable

accommodation; and (3) who was discriminated against solely because of the disability.

<u>Mahon v. Crowell</u>, 295 F.3d 585, 589 (6th Cir. 2002).  The third element requires that

Strong suffer an adverse employment action.  <u>Plautz v. Potter</u>, 156 Fed.Appx. 812, 817

(6th Cir. 2005).

In order to establish the first element - that Strong is a member of a protected

class - he must show that he has a "disability" within the meaning of the ADA.  <u>Smith v.</u>

<u>Ameritech</u>, 129 F.3d 857, 8666 (6th Cir. 1997).  "An individual is considered 'disabled'

under the ADA if she (1) 'has a physical or mental impairment that substantially limits

one or more of the major life activities of such individual,' (2) 'has a record of such

impairment,' or (3) is regarded by her employer as having such an impairment." <u>Gruener</u>

<u>v. Ohio Casualty Ins. Co.</u>, 510 F.3d 661, 664 (6th Cir. 2008) (quoting <u>Sullivan v. River</u>

<u>Valley Sch. Dist.</u>, 197 F.3d 804, 810 (6th Cir. 1999)); <u>see also</u> 42 U.S.C. § 12102(2).  To

be substantially limited in the major life activity of working, "one must be precluded from

more than one type of job, a specialized job, or a particular job of choice.  If jobs utilizing

an individual's skills (but perhaps not his or her unique talents) are available, one is not

precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs

x

7

are available, one is not precluded from a broad range of jobs." <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 492 (1999).

## C.  Hostile Work Environment

Strong asserts that the age and disability discrimination also resulted in a hostile working environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  In order to make out a prima facie case of discrimination resulting in a hostile work environment, Strong must demonstrate that: (1) he is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on plaintiff's protected status; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action.  <u>See</u> <u>Bailey v. USF Holland, Inc.</u>, 526 F.3d 880, 885 (6th Cir. 2008); <u>Grace v. USCAR</u>, 521 F.3d 655, 678 (6th Cir. 2008).

With respect to the fourth element, the Supreme Court has clarified that in order to be actionable, the hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998).  To determine whether an environment is sufficiently hostile or abusive, a court must consider "all of the circumstances," including the "frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993).  The harassment "must be extreme to amount to a change in the terms and conditions of

employment." <u>Faragher</u>, 524 U.S. at 788 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Id</u>. (internal quotation marks and citation omitted).

### D. Retaliation Claims

Strong also claims retaliation as a result of prior EEO activity. Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" allowed for by Title VII. 42 U.S.C. § 2000e-3(a). Retaliation claims are also analyzed under <u>McDonnel Douglas</u> framework. <u>See</u> <u>Morris v. Oldham County Fiscal Ct.</u>, 201 F.3d 784 (6th Cir. 2002). In order to make out a prima facie case of retaliation, Strong must show that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the government; (3) the government thereafter took a materially adverse action against Strong or subjected him to severe and pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action. <u>See</u> <u>Morris</u>, 201 F.3d at 792; <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 67-68 (2006) (modifying the third element of the prima facie case to require a "materially adverse" action rather than an "adverse employment action").

### V. Strong's Claims

The government has broken down Strong's case into eight discrete "claims" and argues separately for summary judgment as to each claim. Strong has not objected to the government's characterization of his case and has responded to each claim with arguments against summary judgment. Each claim will be addressed in turn below.

## A. Claim 1

Strong was subjected to a hostile work environment when he was yelled at, threatened, and or followed on February 22, March 8, 10, 13, 17 and April 3, 2006.

### 1.

Strong says on these dates his supervisor SDO Sylvester Brown told him to return to his work area and not chat with his co-workers. He says that Brown's comments were made because of his age, disability, and in retaliation for prior EEO activity. He also says the comments resulted in a hostile work environment. The details of Brown's comments are set forth in the government's statement of material facts ¶ 6-10. Strong does not seriously dispute the accuracy of the government's recitation of Brown's comments.

### 2.

With respect to his age claim, the government says that there is no evidence that Strong was treated differently than a younger person or that age was a factor in the supervisor's comments. The Court agrees. Although Strong says that Brown did not give similar instructions to four younger employees during one incident, those employees are not similarly situated. Unlike the four younger employees, Brown had to instruct Strong on at least three prior occasions to return to his work area. He also has no evidence the comments were in any way based on Strong's age. Moreover, Brown

is only one year younger than Strong and is himself a member of the protected class. Strong has therefore failed to make out a prima facie case of age discrimination with regard to Brown's comments.

As to Strong's disability claim, Strong has failed to make out a prima facie case because he offers no evidence that his impairments of plantar fasciitis and lumbar strain substantially one or more major life activities. Strong's plantar fasciitis is relieved with the use of orthodics. Strong admits his lumbar strain was resolved by May 29, 2006. Moreover, although Strong was placed on limited duty and light duty assignments during the period covered in the complaint, this does not establish that Strong was substantially limited in his ability to perform major life activities. To the extent he claims he was substantially limited in the major life activity of working, the evidence is insufficient. As noted above, Strong must establish that he is unable to work in a broad class of jobs. Strong says that as of November 27, 2007 he was restricted to one hour of standing and seven hours per sitting. However, Claim 1 covers the time from late February through early April 2006 during which Strong was only limited to standing four hours per day and sitting four hours per day. Thus, even with these restrictions, Strong was capable of a broad range of work during the relevant time. Strong also fails to make out the fourth element of a prima facie case - that he was treated differently than a similarly situated individual without disabilities. Strong cites the same four non-disabled employees cited with respect to his age claim. As discussed above, these employees are not similarly situated.

With respect to his retaliation claim, Strong has not shown that Brown was aware of Strong's prior EEO activity or that there is a causal connection between Brown's

chastising Strong for leaving his work area and talking to co-workers and Strong's EEO activity.  As such, Strong has not make out a prima facie case of retaliation.

As to his claim of hostile environment, there is no evidence that Brown's comments were caused or based on Strong's age, disability or prior EEO activity. Moreover, Brown's comments do not rise to the level of constituting a hostile work environment.  It is well-established that occasional sharp words or "offensive utterances" do not amount to a hostile work environment.  See Faragher, 524 U.S. at 788.

Finally, even assuming Strong made out a prima facie case of age or disability discrimination or retaliation, the government has articulated a legitimate non-discriminatory reason for Brown's treatment of Strong.  Postal employees are expected to remain in their work area and not discharge their duties effectively and obey the instructions of their supervisors even if they disagree with them.  See Government's Exhibit 9, particularly Part 665.13 of the Employee and Labor Relations Manual (ELM). Brown's statements indicate he was attempting to make sure Strong properly carried out his duties.  There is no evidence that Brown's statements were a pretext for any form of discrimination or retaliation.

Overall, the government is entitled to summary judgment on Strong's first claim.

### B.  Claim 2

On March 14, 2006, Strong was subjected to a hostile work environment when he was informed that his health benefits had been cancelled and he was required to re-enroll because of the denial fo light duty from September 29, 2005 through December 5, 2005

1.

Termination of postal service employee benefits is governed by the provisions of part 524.7 of the ELM.  Section 524.7 provides that an employee is not entitled to continuation of health benefits where he or she has been in continuous nonpay status for 365 days or has less than four consecutive months of pay status since exhausting the 356 days of coverage in nonpay status.  Coverage for an enrolled employee continues temporarily without cost to the employee for 31 days after the enrollment terminates for any reason except voluntary cancellation.  With an employee is no longer entitled to health benefits, the Accounting Service Center in Eagan, Minnesota issues a SF 2810 Notice of Change in Health Benefits Enrollment terminating the coverage.  See Government's Ex. 9.

On February 15, 2006, the Accounting Service Center sent Strong a SF 2810 notifying him that his health benefits has ceased on February 3, 2006, subject to the 31 day automatic extension, because of his extensive time in nonpay status.  Strong's time in nonpay status was due to the lack of work available within his medical restrictions.  The notice has informed Strong that he could reapply for benefits within 60 days of returning to pay status.

Strong, however, was in pay status as of February 15, 2006 through April 25, 2006 and therefore could have reapplied for coverage during that period.  It is not clear whether Strong reapplied.  However, Strong has not alleged that his health benefits were actually discontinued.

## 2.

With respect to his age discrimination claim, Strong has not identified a similarly situated younger person that was treated more favorably regarding the cancellation of

health benefits when in nonpay status.  There is simply no evidence that age played a role in the notification.  Indeed, the notification was consistent with applicable policies.

As to disability discrimination, Strong has not shown that he suffers from a disability.  He also has not identified a similarly situated non-disabled person who received more favorable treatment.

Strong's retaliation claim also fails.  Strong has no evidence that the Accounting Service Center was aware of his prior EEO activity or that there is a causal connection between the notice and Strong's activity.

With respect to a hostile environment claim, Strong has not shown that the notification of cancellation of his health benefits created a hostile work environment.

Moreover, even assuming Strong made out a prima facie case on any of his claims, the government has articulated a legitimate non-discriminatory reason for notifying Strong that his health benefits were being cancelled - his time in non-pay status.  There is no indication that this reason was a pretext for any form of discrimination.

## C.  Claim 3

On April 2, 19, 20, 2006 Strong was subjected to a hostile work environment when wh was moved out of his work assignment

### 1.

As noted above, on September 17, 2003, Strong was offered a Mail Handler assignment due to his plantar fasciitis.  At the time his medical restrictions were no lifting over 100 pounds, no pushing over 200 pounds, a standing restriction of 4 hours and a sitting restriction of 4 hours.

14

On April 20, 2006, a proposed modified Mail Handler assignment was prepared taking into account Strong's updated medical restrictions, primarily offering Strong to alternate every 2 hours between standing and sitting, with standing work performed on the "115 belt" and sitting work performed on the Rewrap belt. This restriction was offered to Strong on May 16, 2006. Strong rejected it on May 25, 2006.

On May 22, 2006, Strong was again extended the same limited duty offer. On June 20, 2006, Strong rejected the offer.

On July 5, 2006, Strong was again extended the same limited duty offer with one change. The offer removed the restriction that Strong was no required to lift the sacks off the 115 belt. Strong accepted this limited duty offer the same say.

2.

As noted above, the record is devoid of any evidence that Strong was moved out of his work assignment on the dates claimed or at any other time. Rather, Strong was offered and eventually accepted a modified limited light duty assignment within his updated medical restrictions. Strong does not deny that he was offered limited light duty during this time or that he was offered work when work within his medical restrictions was available. Moreover, discrete acts of alleged discrimination, such as being moved out of a work area, do not support a claim of a hostile work environment. See Sasse v. Dept. of Labor, 409 F.3d 773, 783 (6th Cir. 2005). There is simply no evidence to support Strong's claim.

D. Claim 4

On April 26 to May 22, 2006 Strong was denied light duty; therefore his health benefits were cancelled

1.

On April 26, 2006, Strong requested light duty from Plant Manager Louise Dunlap for April 26-30, 2006. Dunlap initially denied the request for lack of proper medical documentation. Strong then submitted documentation; however, Dunlap denied the request because there was no light duty available within his medical restrictions.

On May 1, 2006, Strong requested light duty for May 1-6, 2006. On May, 2, 2006, Dunlap approved the request, assigning Strong to a custodial position with a 25 pound weight restriction. On May 4, 2006, Strong wrote Dunlap that stating that there were no custodial positions that met his restrictions.

On May 10, 2006, Strong again requested light duty for May 10-14, 2006. Dunlap denied the request because there was no work available within Strong's medical restrictions.

On May 16, 2006, Strong submitted another request for light duty for May 15-28, 2006. Dunlap again denied the request for lack of available work.

On May 22, 2006, Dunlap approved Strong's request for light duty from May 22-28, 2006, assigning him to alternate every 2 hours between the 115 belt and the rewrap Unit.

As of May 29, 2006, Strong had fully recovered from his lumbar strain.

Meanwhile, on May 18, 2006, the Accounting Center sent Strong a SF 2810 again notifying him that his health benefits were cancelled as of April 28, 2006 due to

being in nonpay status.  As of May 22, 2006, Strong was eligible for pay status and therefore could have reapplied for benefits.

2.

As to his claim of age discrimination, during the administrative process Strong identified six female employees who he alleged were treated more favorably relative to requesting and being given light duty assignments under the same or similar circumstances.  As the government points out, the employees are not similarly situated. Indeed, two of the comparable employees are not significantly younger and one is older. Moreover, there is no evidence that his request for light duty was denied because of Strong's age.

With respect to his disability claim, it fails for the same reasons discussed above.  Namely, Strong has not shown that he is disabled or that he was treated differently than similarly-situated non-disabled individuals.

Strong's retaliation claim also fails.  Dunlap states in an affidavit that she was not aware of any of Strong's prior EEO activity.  Strong offers nothing to shed doubt on Dunlap's statement.

Finally, Strong has not made out a claim for a hostile work environment resulting from the denial of light duty.  Significantly, Strong has not even alleged that his health benefits were ever cancelled.

Even assuming Strong had established a prima facie case on any of his claims, the record shows that the government's actions were legitimate and non-discriminatory. Strong was offered light duty when work was available within his restrictions.  Strong's requests were denied when he did not have proper documentation or if no work was

available.  Strong has no evidence that these reasons were pretextual for any form of discrimination.

## E.  Claim 5

On June 7, 2006, Strong received a letter of warning

### 1.

On June 7, 2006, SDO Barbara Williams issued Strong a letter of warning for being absent and on unscheduled leave (leave that was neither requested nor approved in advance) on April4-6, 12-13, 18-19 and May 26, 30-31 June 6, 2006 and for being AWOL on April 26 through May 23, 2006.

### 2.

As to all of Strong's claims of age and disability discrimination and retaliation, he has failed to establish the second element of a prima facie case - that he suffered an adverse employment action.  De minimus employment actions, such as a letter of warning, are not materially adverse and therefore not actionable.  See McMillian v. Potter, 130 Fed. Appx, 793, 796-97 (6th Cir. 2005) (letter of warning does not constitute an adverse employment action).

Moreover, with respect to his age discrimination claim, Strong has not shown he was treated less favorable than a younger employee.  During the administrative proceedings, Strong identified 4 female employees.  However, all of the employees were over 40 in 2006 and thus members of Strong's same protected class.

Strong's disability discrimination claim fails for reasons previously discussed - Strong has not shown he suffers from a disability or that non-disabled persons were treated more favorably.

As to his retaliation claim, Williams stated in an affidavit that she was not aware of Strong's prior EEO activity at the time she issued the letter of warning.  Strong has produced no evidence to rebut this statement.

Again, even assuming Strong made out a prima facie case on any of his claims, he has not rebutted the government's legitimate non-discriminatory reasons for the letter of warning - Strong's violation of leave policies.

## F.  Claim 6

On June 8, 2006, Strong was denied a permanent job offer

### 1.

According to applicable policies governing postal employees, if an employee's injuries are found by the Officer of Workers Compensation Program (OWCP) to be caused by an on-the-job injury and to have obtained their maximum level of improvement (MMI), then the Postal Service will develop a "permanent job offer" for the employee.  The permanent job offer will attempt to match the employee's permanent restrictions with a set of duties that will be beneficial to the Postal Service.  A permanent job offer cannot be made until it is determined by OWCP that the MMI has been reached.

### 2.

Limited duty, at issue here, is by definition temporary.  Strong was on limited duty throughout the period of the complaint and has been on limited duty since 2004.  Although the Postal Service has requested from OWCP at least twice for a determination of whether Strong has reached MMI, there is nothing in the record to indicate that OWCP made a determination.

Strong cannot make out an age, disability or retaliation claim based on the record. To date, OWCP has not made a determination as to whether Strong has reached MMI, or at least has not informed the Postal Service of any decision. Until such time, Strong is not eligible for a permanent job offer. There is no evidence that any younger or non-disabled person has been treated more favorably or that the government's actions are pretextual.

### G.  Claim 7

On June 12, 2006, Strong was issued a seven-day suspension

### 1.

On June 12, 2006, SDO Andrana Williams issued Strong a notice of a seven-day "no time off" suspension for failing to discharge his duties on May 31 and June 7, 2006 by leaving his work area and talking with co-employees. Strong contests the length of time he was away from his work area and talking with co-workers, but does not appear to dispute that he was engaged in the behavior.

### 2.

Strong's claims of age and disability discrimination and retaliation all fail because issuance of the seven-day suspension is not an adverse employment action. The suspension did not materially alter or affect the terms of Strong's employment. By its terms, it was a "no time off" suspension and there is no indication that it was unpaid or otherwise resulted in materially adverse consequences. Although the Sixth Circuit has found that an adverse employment action may include a suspension, Smith v. City of Salem, 378 F.3d 566, 575-76 (6th Cir. 2004), this was not a true suspension, but rather a "no time off" suspension. There is no evidence in the record indicating that Strong

was not paid or that his employment was otherwise materially altered as a result of the suspension.

Moreover, Strong's age discrimination claim fails because he has not identified a similarly situated younger person who was treated more favorably relative to a notice of a "no time off" suspension. His disability claim fails for failure to establish that he is disabled or that he was treated differently than a non-disabled.

As to a claim for retaliation, Williams stated in her affidavit that she was not aware of Strong's prior EEO activity. Strong offers nothing to case doubt or create a genuine issue of material fact as to Williams' knowledge.

Finally, assuming Strong made out a prima facie case of age or disability discrimination or retaliation, he has not rebutted the government's legitimate non-discriminatory reason for the suspension - Strong repeatedly leaving his work area and talking to other employees.

## H.  Claim 8

On June 23, 2006, Strong received a five-day letter stating he was in AWOL status as of June 9, 2006

### 1.

On June 21, 2006, Barbara Williams sent Strong a letter notifying him that the records showed he was absent from duty since June 9, 2006 and that he would be carried in AWOL status if he did not document why he was not at work within five days of receipt of the letter.

### 2.

Issuance of a letter notifying him of being in AWOL status unless Strong

documented otherwise is not an adverse employment action. As such, Strong cannot make out a prima facie case of age or disability discrimination or retaliation.

As to an age discrimination claim, Strong has not identified any younger person who was treated more favorably under similar circumstances. During the administrative proceedings, Strong identified two women; however, both were over 40 and therefore also members of the protected class. One of them was eight years older than Strong.

Strong's disability claim fails for reasons set forth above regarding a failure to establish a disability or identify a non-disabled who was treated more favorably.

Strong's retaliation claim fails because Williams stated in an affidavit that she was unaware of Strong's prior EEO activity at the time the letter was sent. There is also no evidence of a causal connection between the activity and the issuance of the five-day letter.

Finally, the government has articulated a legitimate non-discriminatory reason for issuance of the letter - Strong's failure to properly document his absences. Strong has not shown this reason was pretextual.

VI. Conclusion

Although Strong contends that he has been a victim of age discrimination, disability discrimination, retaliation and subjected to a hostile work environment, the record simply does not support these contentions. Rather, the record shows that Strong had attendance and disciplinary problems which the Postal Service addressed. The Postal Service also attempted to locate work within Strong's documented medical restrictions and did locate work on most instances. There is no indication that any

actions against him were taken because of his age or alleged disability or in retaliation for prior EEO activity. Moreover, the record fails to show that Strong was subjected to a hostile work environment.

For the reasons stated above, the government's motion for summary judgment is GRANTED. This case is DISMISSED.

 s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: October 29, 2008

I hereby certify that a copy of the foregoing document was mailed to Kevin Darnell Strong, 27610 Goldengate Dr. W., Lathrup Village, MI 48076 and the attorneys of record on this date, October 29, 2008, by electronic and/or ordinary mail.

 s/Julie Owens
Case Manager, (313) 234-5160